UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL J. BOGNER,

                         Plaintiff,              05-CV-6171

            v.                                   **DECISION
                                                 and ORDER**

THE WACKENHUT CORPORATION,

                         Defendant.
_____

## INTRODUCTION

Plaintiff Michael J. Bogner ("plaintiff" or "Bogner"), brings this action pursuant to the American with Disabilities Act of 1990, (codified at 29 U.S.C. § 12112 et. seq.) ("ADA"), and the New York State Human Rights Law, (codified at N.Y. Exec. Law. § 296, et seq.) ("NYSHRL"), alleging two causes of action. The first cause of action claims that plaintiff's former employer, The Wackenhut Corporation ("defendant" or "Wackenhut"), discriminated against him in the terms and conditions of his employment based on his disability. Specifically, plaintiff, who was employed by Wackenhut as a security guard, alleges that he is disabled under the ADA as a result of his epilepsy; that defendant failed to accommodate his injury; and that he was unlawfully terminated from his employment because of his condition. In his second cause of action, Bogner alleges that defendant violated NYSHRL by unlawfully discriminating against plaintiff in the workplace due to his disability.

Defendant denies plaintiff's claims, and contends that Bogner was asked to work evenings in addition to his morning and afternoon shifts and that he refused to work the additional hours. Defendant moves for summary judgment on grounds that plaintiff has failed to state a cause of action for employment discrimination. Plaintiff opposes defendant's motion asserting that there are material issues of fact preventing summary judgment and, in the alternative, plaintiff also has cross-moved for summary judgment asserting that he was discriminated against on the basis of a disability as a matter of law in violation of the ADA. For the reasons set forth below, defendant's motion for summary judgment is granted and plaintiff's summary judgment motion is denied.

## BACKGROUND

Plaintiff initially worked for Wackenhut as an Armed Security Officer in April 2002.[1] Plaintiff worked at Wackenhut for two periods from April 2002 to October 2002 and then during August 2004. During plaintiff's interview in April 2002, he informed representatives of Wackenhut that he had epilepsy and they told him it was not a problem as long as he passed the physical.[2] Wackenhut subsequently offered plaintiff the job, and after having passed the required medical examination began working at the facility. Plaintiff was on medication and was seizure-free from the time he

---

[1] Defendant provides security services at the Ginna Nuclear Power Plant on Lake Ontario, New York.

[2] Bogner has in the past experienced seizures due to his epilepsy since a car accident in 1997.

2

was employed by Wackenhut until he was involved in a second car accident in October 2002 following which he had recurrent seizures and went on medical leave. He received a notice from defendant in February 2003 advising him that his employment was terminated because he had exceeded his allowed leave time.[3]

In April 2004, plaintiff reapplied to Wackenhut and disclosed his seizure disorder on the application. Wackenhut rehired plaintiff and he began training in August 2004. While still in training, plaintiff learned that he and other trainees would be required to work all three shifts. Bogner informed his training officer, the captain and the project manager that he did not believe he could work the required schedule. Wackenhut told plaintiff to review the schedule with his doctor. Plaintiff's doctor wrote a note indicating that plaintiff "should work only days so that he gets into the best routine to minimize the risk of recurrent seizures." See Bogner Tr. 58:2-21. Bogner showed the note to his employer who then gave plaintiff an actual schedule for the doctor's review and comment. The doctor responded with a note, which advised that Bogner could not work between 10:30 p.m. and 6:30 a.m. Upon further discussion, on August 24, 2004, plaintiff was terminated because of his inability to work the night shift (10:30 p.m. to 6:30 a.m.) In addition, plaintiff could not work

---

[3]Bogner received disability insurance benefits from his Wackenhut-sponsored Met Life policy for 6 months and from his own State Farm policy until a year passed after his accident. Bogner had his last seizure in May 2003.

"early-in" overtime on the day shift, which requires that he report before the beginning of the shift at 6:30 a.m. or "hold-overs" after the evening shift, which extends beyond 10:30 p.m.[4]

According to defendant, being available for overtime is an essential job function as well as being available working different shifts as needed. Defendant explains that an important requirement of the job is that "you be able to work when you are called. No matter what time of day or night, due to staffing requirements...." See Tr. Palmer 33:18-20. Anybody could be called at any time and everybody is required to be able to respond to an emergency or to fill required staffing. Wackenhut determined that if Bogner could not be available for work from 10:30 p.m. until 6:30 a.m., then as a practical matter, retaining him as an employee could represent a substantial hardship to Wackenhut. If plaintiff was the only security officer available to fill a minimum staffing requirement during the hours he was advised to work, his absence would put Wackenhut in violation of federal standards. Further, if an emergency occurred during the night shift, Bogner could not come in or hold over to fulfill commitments after 10:30 p.m. to 6:30 a.m.

Plaintiff argues that the reason given for his termination was inconsistent with the treatment given to other security guards who

---

[4]At the time of Bogner's reapplication for employment at Wackenhut, Ginna was preparing to switch to a new scheduling system, which went into effect in June 2004. The new schedule was a rotating permanent schedule based on a four week cycle and contained a combination of possible 12-hour shifts. Security officers were assigned to a team and would do so many 8-hour day shifts plus a combination of "in-early" on night shift and "hold over" onto evening shifts. Anyone assigned to the day shift would do a combination of "in earliest" and "hold over" shifts during a four week cycle. Night and evening shifts existed as well, and all security officers were on rotating shifts.

requested and obtained permission from Wackenhut to work only certain shifts. Plaintiff contends that there is testimony showing that a female security guard was hired back to work notwithstanding the fact that she announced that she refused to work the night shift. According to plaintiff, this was the same shift that his doctor did not want him to work and was the stated reason for his termination by defendant. In fact, plaintiff argues there is testimony that shows that security guards were permitted to choose their own shifts. In addition, plaintiff states that there was never a time that Wackenhut had to call each and every security guard to come into work on a particular shift for emergency or any other reason.

With respect to plaintiff's physical condition, there is no dispute that he has epilepsy and that he had not had a seizure since May 5, 2003. Plaintiff continues to take medication for his condition and as a result, his epilepsy has been controlled and he has not suffered any seizures for several years. Plaintiff currently operates his own business, Bogner Contracting, which provides backhoe service and equipment.

**DISCUSSION**

**I.   Motion for Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure prescribes summary judgment where the evidence demonstrates that there is no genuine issue of fact and that the moving party is entitled to summary judgment as a matter of law.  Fed. R. Civ. Proc. 56(c).

Summary judgment dismissing an employment discrimination case is warranted only where a plaintiff cannot provide evidence to support an essential element of her claim.  See Schnabel v. Abramson, 232 F.3d 83 (2d Cir. 2000); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998).

However, where a plaintiff claims he or she is the victim of unlawful discrimination, an award of summary judgment is ordinarily inappropriate.  See Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir.1991).  As the Second Circuit has recognized, employment discrimination

> is often accomplished by discreet manipulations and hidden under a veil of self-declared innocence. An employer who discriminates is unlikely to leave a "smoking gun," such as a notation in an employee's personnel file, attesting to a discriminatory intent. A victim of discrimination is therefore seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence.

Id. (internal quotations omitted).

Nonetheless, to defeat a motion for summary judgment, a plaintiff must rely on more than mere conclusory allegations that the discrimination occurred. "Indeed, the salutary purposes of summary judgment--avoiding protracted, expensive and harassing trials--apply no less to discrimination cases than to commercial or other areas of litigation." Meiri v. Dacon, 759 F.2d 989,998 (2d Cir.1985).

II.  **Plaintiff has failed to state a claim under the Americans with Disabilities Act**

Plaintiff alleges that he was terminated as a result of a disability in violation of the Americans with Disabilities Act, codified at 42 U.S.C. § 12101 et. seq.  Section 12112 of the ADA prohibits discrimination against qualified individuals with a disability with respect to conditions of employment including hiring, advancement, discharge and compensation. See 42 U.S.C.A. § 12112 (1995). Disability discrimination claims brought pursuant to the ADA and the NYHRL are governed by the same legal standards, and thus will be evaluated using the McDonnell Douglas burden-shifting test. See Parker v. Columbia Pictures Indus., 204 F.3d 326, 332 n.1 (2d Cir.2000) (NYSHRL and ADA evaluated same way); Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir.1998) (McDonnell Douglas test used for ADA claims).

To establish a prima facie case of discriminatory termination on account of a disability under the ADA, a plaintiff must demonstrate that: (1) the defendant employer is covered by the statute;[5] (2) he suffers from a disability as defined by the ADA; (3) plaintiff was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action as a result of his disability. See Felix v. New York City Transit Auth., 324 F.3d

---

[5]Defendant is subject to the provisions of the ADA since it employs more than 15 people. See 29 C.F.R. § 1630.2(e)(1) (2005).

102, 104 (2d Cir.2003); <u>Joyce v. Suffolk County</u>, 911 F.Supp. 92, 94 (E.D.N.Y. 1996). Once a plaintiff has stated a prima facie case of discrimination, the defendant must proffer a legitimate, non-discriminatory reason for dismissing the plaintiff. If the defendant satisfies this requirement, the burden then shifts back to the plaintiff to rebut defendant's proffered reason by demonstrating that the defendant's explanation is either pretextual or not worthy of credence. See <u>Tomka v. Seiler</u>, 66 F.3d 1295, 1308 (2d Cir. 1995).

### A. **Plaintiff has failed to establish that he is a disabled person within the meaning of the ADA**.

Plaintiff contends that he is disabled as a result of his epilepsy. While there is no dispute that plaintiff suffers from epilepsy, it is well settled under federal law that the ADA requires more than a diagnosis of a condition for a person to be considered disabled as that term is defined under the act. See <u>Toyota Motor Mfg., Kentucky, Inc. v. Williams</u>, 534 U.S. 184, 198 (2002)(holding that "[i]t is insufficient for individuals attempting to prove disability status ... to merely submit evidence of a medical diagnosis of impairment"). Accordingly, to establish the existence of a disability, a plaintiff must demonstrate that he or she suffers from a physical or mental impairment that "substantially limits one or more major life activities ...." 42 U.S.C. § 12102(2)(A). Therefore, the threshold question for

determination in this case is whether or not plaintiff's epilepsy constitutes a disability under the ADA.

"Major life activities" are defined in the regulations promulgated by the EEOC as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii). To be "substantially impaired" from performing a major life activity, a plaintiff must have an impairment that "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." See Toyota, 534 U.S. at 197. Moreover, "[t]he impairment's impact must also be permanent or long term." Id.; see also 29 C.F.R. § 1630.2(j)(1)(I)-(ii)(A major life activity is substantially limited when an individual cannot perform an activity that an average person in the general population could perform, or faces significant restrictions in the "condition, manner, or duration under which the individual can ... perform [the] activity.") Finally, the determination of whether or not a person suffers a disability under the ADA "is an individualized inquiry" that does not rest on the mere diagnosis of an impairment. See Sutton v. United Airlines, 527 U.S. 471, 483 (1999). Instead, courts are to look to "the effect of [an] impairment on the life of the individual." See 29 CFR pt. 1630, App. § 1630.2(j); see also Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 151 (2d Cir.1998)(disability determinations to

be made on an individualized case-by-case basis)[.]" 42 U.S.C. § 12102(2)(A).

In the instant case, it is undisputed that plaintiff has not had any seizures since May 2003. Plaintiff suggests that he is substantially limited in the major life activity of working and sleeping. "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires ... that the plaintiffs allege that they are unable to work in a broad class of jobs." See Sutton, 527 U.S. at 491. In this case, plaintiff has failed to establish that he was unable to perform a broad class of jobs. Indeed, plaintiff has been operating his own business since his termination by Wackenhut. With respect to his job at Wackenhut, plaintiff can show only that his epilepsy has affected his major life activity of working in a job that requires him to work between 10:30 p.m. and 6:30 a.m. This, at best, demonstrates an inability to work during an 8-hour period at night. It is possible for Bogner, an epileptic whose condition is well controlled by medication, to work any job for which he is qualified, that provides him with day time shifts because his only restriction is that he cannot work at night.

In addition, plaintiff has not alleged that he is unable to work in any specific job, much less a broad class of jobs. Plaintiff's deposition testimony includes references to his ability to satisfactorily perform job duties of his former armed security

officer position, including passing the company's required physical examinations. Because plaintiff admits that he was able to function in his job, he has failed to establish that he was substantially limited in performing the major life activity of working. Moreover, in his medicated state, plaintiff has not suffered a seizure since May 2003 and even the effects of a seizure could not be classified as substantial. Thus, plaintiff's epilepsy does not rise to the level of a disability under the ADA and summary judgment is granted in favor of defendant. See Colwell v. Suffolk County Police Dept., 158 F.3d 635, 644-45 (2d Cir. 1998) (plaintiff police officer's medical restrictions that he not work "late hours or rotating shifts" was insufficient to show that he was significantly restricted in his ability to work at a class or broad range of jobs).

**B.**   **Plaintiff has not established that he is an otherwise qualified individual within the meaning of the ADA.**

Plaintiff complains that he was fired because defendant refused to accommodate his disability by allowing him to work only the day shift. Even assuming that plaintiff is disabled under the ADA, plaintiff must still show that with reasonable accommodation, he could perform the essential functions of the position.[6] See Stone v. City of Mount Vernon, 118 F.3d 92, 97 (2d Cir. 1997), Lyons v. Legal Aid Society, 68 F.3d at 1515. In determining whether

---

[6]An "essential function" is a function "that bear[s] more than a marginal relationship to the job at issue." See Milton v. Scrivner, 53 F.3d 1118, 1123 (10th Cir. 1995).

a plaintiff can perform the essential functions of his or her job, "a court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position." See Shannon v. New York City Transit Auth., 332 F.3d 95, 100 (2d Cir. 2003) (internal quotations omitted). Whether the required job is essential necessitates an "initial inquiry ... [into] whether an employer actually requires all employees in the particular position to perform the allegedly essential function." See Milton, 53 F.3d at 1124.

If an employee is disabled under the ADA, an employer must "make reasonable accommodations to the known physical ... limitations of an otherwise qualified individual with a disability[.]" See Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 218 (2d Cir. 2001) The employer can defeat the claim if it shows (a) that making a reasonable accommodation would cause it hardship, and (b) that the hardship would be undue. See Hoehn v. Int'l Security Serv. and Investigations, Inc., 244 F.Supp.2d 159, 173 (W.D.N.Y. 2002); see also Runkle v. Potter, 271 F.Supp.2d 951, 962 ("[a]n accommodation that eliminates an essential function of the job is unreasonable per se"). The burden of proof on these two issues is on the employer. See e.g. Borkowski v. Valley Central School Dist., 63 F.3d 131, 138 (2d Cir.1995).

Here, shift rotation is one of the essential functions of Wackenhut's armed security officer's job at the Ginna facility for

24-hour security. Bogner, as an armed security officer, held a job for which an essential function was dependable attendance for required shift rotations. Essentially, plaintiff is making defendant create a new job for him similar to a permanent light duty post. Such accommodation is not reasonable since it would permit plaintiff to work shifts different from those of all other armed security officers. This not only eliminates an essential function of Bogner's position but it also creates an entirely new position and imposes an additional burden on Bogner's co-workers.

Plaintiff argues that he is only requiring minimal scheduling accommodations regarding the hours of his employment. However, plaintiff's inability to work between the hours of 10:30 p.m. and 6:30 a.m. effectively means that he cannot work the night shift or the day shift or the evening shift because he could not be available as required for "early in overtime on the day shift or holdover on the evening shift," which are essential to his job. See Defs. Statement of Facts at pp. 2-3. Moreover, plaintiff is not able to fulfill the other essential functions of his former position such as, emergency preparedness and competent security at any hour. Anybody could be called at any time and everybody is required to be able to respond to an emergency or to fill required staffing. Wackenhut determined that if Bogner could not be available for work from 10:30 p.m. until 6:30 a.m., then as a practical matter, retaining him as an employee could represent a

substantial hardship to Wackenhut. If plaintiff was the only security officer available to fill a minimum staffing requirement during the hours he was advised to work, his absence would put Wackenhut in violation of federal standards. Further, if an emergency occurred during the night shift, Bogner could not come in or hold over to fulfill commitments after 10:30 p.m. to 6:30 a.m. Accordingly, I find that plaintiff has not established that he is a qualified person with a disability under the ADA.

### III. **Supplemental Jurisdiction**

A district court may decline to hear a state law claim if

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The decision whether or not to exercise supplement jurisdiction under § 1367(c) involves considerations of judicial economy, convenience, comity and fairness to litigants. See Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994). "The statutory concept of supplemental jurisdiction codified and expanded somewhat the earlier judge-made doctrines of pendent and ancillary jurisdiction. Just as with the prior law of pendent jurisdiction, the exercise of supplemental jurisdiction is left to the discretion of the district court." See Purgess, 33 F.3d at 138.

In the instant case, the court has original federal question jurisdiction over plaintiff's claims that defendant violated the

ADA. However, this court has granted summary judgment to defendant dismissing the ADA claim. The issue, therefore, before the Court is whether this Court should exercise supplemental jurisdiction over plaintiff's remaining NYSHRL claim. Defendant argues that the court should dismiss plaintiff's NYSHRL claim because, according to defendant, plaintiff's ADA claim fails to state a prima facie case and must be dismissed. See Def. Br. at 17. Defendant asserts that it is proper to dismiss the pendent state law claim without prejudice since plaintiff may re-file the action in the appropriate state court. See id. Because plaintiff's ADA claims are dismissed, this Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claim, which is dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, I grant defendant's motion for summary judgment dismissing the plaintiff's ADA claim and deny plaintiff's motion for summary judgment. This Court further declines to exercise supplemental jurisdiction over the remaining New York State Human Rights Law claim, which is dismissed without prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
Michael A. Telesca
United States District Judge

DATED:    Rochester, New York
          January 7, 2008